1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

NATALIE A.W.,

7
                        Plaintiff,

8       v.

9    COMMISSIONER OF SOCIAL
     SECURITY,

10
                        Defendant.

Case No. 3:21-cv-05498-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11

12       Plaintiff has brought this matter for judicial review of defendant's denial of her

13   application for disability insurance benefits.

14       The parties have consented to have this matter heard by the undersigned

15   Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

16   MJR 13.

17                          I.      ISSUES FOR REVIEW

18       I. Did the ALJ Properly Evaluate the Medical Opinion Evidence?

19                          II. BACKGROUND

20       On June 19, 2015, plaintiff filed an application for DIB, alleging in her application

21   a disability onset date of January 1, 2013. Administrative Record (AR) 426.[1] Plaintiff's

22

23
    ---
    [1] Due to an overlap between Plaintiff's alleged period of disability and the adjudication of a prior claim, the
24   period at issue in this case began on September 2, 2014. AR 17.

25

application for DIB was denied upon official review and upon reconsideration. AR 198, 213. A hearing was held before Administrative Law Judge ("ALJ") Paul Gaughen on June 20, 2017. AR 39–73. On January 11, 2018, ALJ Gaughen issued a decision finding that plaintiff was not disabled. AR 232–52. On December 27, 2018, the Social Security Appeals Council issued an order remanding the application to the ALJ to resolve inconsistencies in the residual functional capacity ("RFC") analysis. AR 253–57.

ALJ Gaughen then held a new hearing on July 15, 2019. AR 74–134. A supplemental hearing was held before ALJ David Johnson on January 7, 2020, followed by ALJ Johnson's issuance of a new decision on February 5, 2020, again finding plaintiff to be not disabled. AR 14–38. On May 26, 2021, the Appeals Council denied plaintiff's request for review. AR 1–6.

Plaintiff seeks judicial review of the ALJ's February 5, 2020 decision. Dkt. 1.

III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

IV.  DISCUSSION

In this case, the ALJ found that plaintiff had the severe, medically determinable impairments of neurocognitive disorder, post-traumatic stress disorder ("PTSD"), rule-out hoarding disorder, cerebral palsy, depressive disorder, anxiety disorder, headaches,

and fibromyalgia. AR 21. Based on the limitations stemming from these impairments, the ALJ found that plaintiff could perform a reduced range of light work. AR 23–24. Relying on vocational expert ("VE") testimony, the ALJ found at step four that plaintiff could not perform past relevant work, but could perform other light, unskilled jobs at step five of the sequential evaluation; therefore, the ALJ determined at step five that plaintiff was not disabled. AR 29.

    A.  <u>Whether the ALJ Properly Evaluated Medical Opinion Evidence</u>

    Plaintiff contends that the ALJ erred in evaluating the medical opinion of clinical psychologist Bill Ekemo, Ph.D., as well as treating physicians Lisa Soehren, D.O., and Michael Adling, D.O. Dkt. 11, p. 1.

    Plaintiff filed the application for benefits before March of 2017, therefore the older regulations apply. 20 C.F.R. § 404.1527(c)(2). Acceptable medical sources include both licensed physicians and licensed psychologists. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) (citing 20 CFR § 404.1513(a)(1). Pursuant to the rules applicable to this case, in assessing an acceptable medical source, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining doctor's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

1

2          i. Opinion of Dr. Ekemo

3          Dr. Ekemo, an examining psychologist who also treated plaintiff during the period

4   at issue, provided a statement concerning plaintiff's limitations on January 16, 2016.

5   *See* AR 887–93. Dr. Ekemo noted plaintiff's diagnoses of cognitive disorder not

6   otherwise specified, PTSD, cerebral palsy, and cervical intervertebral disc disorder. AR

7   891.

8          Dr. Ekemo stated that plaintiff would have marked limitation in the ability to

9   maintain attention and concentration for at least two straight hours, four times a day; to

10  complete a normal workday and work week without interruptions from psychologically

11  based symptoms; or perform at a consistent pace without unreasonably numerous or

12  lengthy rest periods; and to set realistic goals or plan independently. AR 887–89. He

13  also stated it was likely plaintiff would be absent from work more than three times per

14  month. AR 883.

15         The ALJ gave limited weight to Dr. Ekemo's opinion, reasoning that it was

16  inconsistent with (1) mental status examinations and memory testing in the record; and

17  (2) plaintiff's activities of daily living. AR 27 (citing AR 761, 766, 824, 827, 829, 991,

18  994, 1009, 1045, 1085, 1314, 1348). Because reviewing doctors contradicted Dr.

19  Ekemo's opinion, the ALJ was required to provide specific and legitimate reasons to

20  reject it. *See* AR 25; *Lester*, 81 F.3d at 830–31.

21         With respect to the ALJ's first reason, inconsistency with the longitudinal medical

22  record can serve as a specific and legitimate reason for rejecting a medical opinion.

23  *See, e.g.*, *Taylor v. Colvin*, 667 F. App'x 256, 257 (9th Cir. 2016) (citing *Ghanim v.*

24

25
ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 4

1  *Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) and affirming an ALJ's rejection of an

2  examining psychologist's opinion as contrary to treatment notes). Here, the ALJ

3  summarized plaintiff's performance in memory testing and mental status examinations

4  from 2014 through 2019. The ALJ discussed notes from several examinations that

5  found plaintiff to be "alert, oriented, cooperative, appropriately dressed, and adequately

6  groomed," and plaintiff "engaged in conversation, demonstrated normal speech and

7  affect, and exhibited [an] intact attention." AR 27 (citing AR 761, 766, 824, 827, 829,

8  991, 994, 1009, 1045, 1085, 1314). The ALJ also cited to the hearing testimony of

9  medical expert Robert Pelc, Ph.D. AR 27. At the hearing, Dr. Pelc indicated that

10  memory tests administered by Dr. Ekemo showed plaintiff, "in terms of memory

11  functioning [. . .] below average but not significantly below average to a point where she

12  would be essentially having highly significant memory difficulties." AR 27 (citing AR

13  151); *see* AR 704.

14         With only one exception, all of the mental status examinations on which the ALJ

15  relied were from providers who were evaluating plaintiff for conditions unrelated to her

16  mental health. *See* AR 761, 766, 824, 827, 829, 991, 994, 1009, 1045, 1085, 1314.

17  Furthermore, the ALJ did not explain how plaintiff's ability to be engaged and

18  cooperative in these brief visits contradicted Dr. Ekemo's opinions regarding her ability

19  to maintain attention and concentration for two hours or longer, complete a full workday

20  and work week without interruption from her symptoms, or set realistic goals and plan

21  independently. Nor did the ALJ explain the nexus between adequate results in memory

22  testing and Dr. Ekemo's opined limitations. AR 27, 887–89. In short, to the extent the

23

24

25

1  ALJ relied on inconsistency between these objective measures and Dr. Ekemo's opinion

2  to discount the latter, the ALJ's reasoning was unsupported by substantial evidence.

3      With respect to the ALJ's second reason, claimant's participation in everyday

4  activities, indicating capacities that are transferable to a work setting, may constitute

5  grounds for an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 630 (9th

6  Cir. 2007). Yet, disability claimants should not be penalized for attempting to lead

7  normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722

8  (9th Cir. 1998) (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (claimant

9  need not "vegetate in a dark room" in order to be deemed eligible for benefits)). Here,

10  the activities that the ALJ identified included working 30 hours per week as a nurse,

11  caring for a baby, driving, shopping, and cooking. AR 27 (citing 6E, 13E, hearing

12  testimony).

13      At the hearing, plaintiff testified that she began her part-time nursing job on

14  August 12, 2019 and that the job required her to work three 10-hour shifts per week. AR

15  165-166. The ALJ found that this job, and a prior job plaintiff held, constituted

16  substantial gainful activity, leading the ALJ to deny plaintiff's claim for the period from

17  July 25, 2017, through the date of decision. AR 20–21. The ALJ added:

18      Alternatively, even if either of the work activities were not
    substantial gainful activity, the step five findings below apply throughout
19    the time period at issue as alternative findings and the claim is denied at
    step five, as discussed below, from April 2, 2014, through the date of this
20    decision.

21  AR 20.

22      But plaintiff testified she had been dismissed or resigned from about ten prior

23  jobs in the past ten years because she was not able to keep up, and the employers did

24

25

not find a way to accommodate for her work-related limitations. AR 165-166, 172-177. Regarding the positions she worked in during 2018 and 2019, she testified was asked to resign because she struggled with fatigue and other health concerns, she could not meet the criteria for absences, and could not keep up. AR 165-166, 172-177. Although plaintiff took care of her younger child, her teenage daughter was the subject of a dependency proceeding and guardianship during the period at issue. *See* AR 95, 178, 202, 465–482, 1342-. The other activities listed lack any detail as to the frequency or the intensity with which plaintiff performed them. Plaintiff's activities were not a specific and legitimate reason for discounting Dr. Ekemo's opinion on limitations. Because the ALJ failed to provide any specific and legitimate reason for rejecting that opinion, the ALJ erred.

The Court must determine whether this error was harmless. An error is harmless only if it is not prejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

In this case, the ALJ's error was not harmless. Had the ALJ properly considered Dr. Ekemo's opinion, the ALJ may have incorporated limitations opined therein into plaintiff's residual functional capacity. In particular, the ALJ did not include any limitation in the hypothetical about three days per month being the likely number of plaintiff's absences from work. Nor were there any limitations concerning the marked problems that Dr. Ekemo documents concerning plaintiff's reduced ability to maintain attention and concentration for at least two straight hours, four times a day; to complete a normal workday and work week without interruptions from psychologically based symptoms; or

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 7

perform at a consistent pace without unreasonably numerous or lengthy rest periods; and to set realistic goals or plan independently. Had the ALJ incorporated such marked limitations, in turn, the ultimate disability determination may have changed.

### ii. Opinions of Drs. Adling and Soehren

Drs. Soehren and Adling drafted letters to plaintiff's employer requesting work accommodations under the Americans with Disabilities Act. Tr. 1333, 1341. Specifically, Dr. Soehren described plaintiff's conditions before noting, "[t]hese [conditions] severely impact her ability to do her job as a Registered Nurse and Lactation Consultant." Tr. 1333. She also noted that "[because of these conditions, [plaintiff] needs frequent breaks and shorter work shifts than is typical for this job." Tr. 1333. Dr. Soehren further noted that she has "recommended in the past that work shift should be no longer than 6 hours with breaks every 2-4 hours for at least 15 minutes" and that plaintiff "will also require at least 1 hour of the 6 to complete tasks and charting that is not direct patient care." AR 1333. Finally, she concluded that if plaintiff is unable to be accommodated reasonably [by] her current employer, then [she] would be considered disabled from being a Registered Nurse at her current position." Tr. 1333.

Likewise, Dr. Adling prepared a letter recommending that plaintiff's "work be adjusted per the Americans with Disability Act to accommodate her conditions with work shifts that should be no more than 2 shifts in a week, or 2 shifts every other week with a 3 shift week." Tr. 1341. The ALJ considered these letters and gave them little weight. Tr. 28. In explaining his reasoning, the ALJ noted that these opinions related specifically to plaintiff's ongoing employment working 10-hour shifts as a nurse. Tr. 28, 165. This was a reasonable inference, especially given that Dr. Soehren's opinion made plain that

plaintiff needed accommodations in her current job as a nurse. Tr. 1333. Although Dr.

Adling did not specifically mention plaintiff's job as a nurse, the fact that he referenced

her ability to perform two-to-three shifts in a week corresponds with plaintiff's hearing

testimony, where she reported that she "was supposed to be [working] three 10-hour

shifts a week" but had been allowed to separate the shifts so that she no longer had to

work all three shifts consecutively; rather, she could work one day, take a day off, and

then work two days in a row. AR 165.

Accordingly, the ALJ reasonably inferred that the opinions related specifically to

her job as a nurse, which is a job the ALJ determined she was unable to perform. AR

28-29.

### B. Remand With Instructions for Further Proceedings

Plaintiff asks that this Court remand for further proceedings. Dkt. 11, p. 11. "'The

decision whether to remand a case for additional evidence, or simply to award

benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682

(9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an

ALJ makes an error and the record is uncertain and ambiguous, the court should

remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045

(9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy

the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d

at 668.

The Ninth Circuit has developed a three-step analysis for determining when to

remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed to
> provide legally sufficient reasons for rejecting evidence, whether claimant

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 9

1   testimony or medical opinion; and (3) if the improperly discredited
2   evidence were credited as true, the ALJ would be required to find the
    claimant disabled on remand."

3   *Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir.

4   2014)).

5          The Ninth Circuit emphasized in *Leon* that even when each element is satisfied,

6   the district court still has discretion to remand for further proceedings or for award of

7   benefits. 80 F.3d at 1045.

8          Remand for additional proceedings is the appropriate remedy here. The ALJ

9   erred in failing to provide specific and legitimate reasons for rejecting Dr. Ekemo's

10  opinion on plaintiff's limitations.  This case is remanded to the Social Security

11  Administration for further administrative proceedings – the ALJ is directed to re-evaluate

12  Dr. Ekemo's opinion and take additional evidence and testimony as necessary.

13                          <u>CONCLUSION</u>

14         Based on the foregoing discussion, the Court finds the ALJ erred when he

15  determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore

16  is REVERSED and this matter is REMANDED for further administrative proceedings.

17         Dated this 2nd day of May, 2022.

18

19

20                                  *Theresa L. Fricke*
                                    _____
21                                  Theresa L. Fricke
                                    United States Magistrate Judge
22

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 10